IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN WILLIAM KRPAN,

  *Plaintiff*,

v.

BOARD OF EDUCATION
OF HOWARD COUNTY,

  *Defendant*.

Civil Action No. ELH-12-2789

## MEMORANDUM OPINION

John William Krpan, the self-represented plaintiff, sued the Board of Education of Howard County, Maryland (the "Board"), defendant, asserting five claims of employment discrimination: (1) sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.; (2) national origin discrimination, in violation of Title VII; (3) age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 621 *et seq*. (the "ADEA"); (4) disability discrimination, in violation of Title I and Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq*.; and (5) disability discrimination, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*. *See* Complaint at 3 (ECF 1 at 3).[1] He seeks compensatory damages of $100,000 and injunctive relief.

Defendant has filed two motions that are now pending: a Partial Motion to Dismiss (ECF 5), seeking dismissal of the claim based on national origin discrimination (*i.e.*, Count Two),

---

[1] Plaintiff's Complaint does not contain counts. But, for convenience, I will refer to each claim as a count. For example, the claim of national origin discrimination will be denominated as Count Two. Because plaintiff is self-represented, he is entitled to a liberal construction of his claims. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

alleging failure to state a claim upon which relief may be granted; and a Motion for Summary Judgment (ECF 16) as to the remaining claims. The motions have been fully briefed,[2] and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I will grant both Motions.

## Factual Background

Plaintiff, who is in his late 50s, has been deaf since birth. ECF 1 at 5. He communicates primarily through American Sign Language ("ASL"). Plaintiff asserts: "ASL is his national origin, as is a language for a native American Indian, Alaskan or Pacific Islander. It is accepted as a foreign or world language or for a language other than English in Maryland." ECF 1 at 6.[3]

Plaintiff has taught ASL for 30 years. ECF 1 at 6. During the 2005-2006, 2006-2007, and 2007-2008 school years, Mr. Krpan was employed as an ASL teacher in Fauquier County, Virginia. During the 2008-2009 school year, Mr. Krpan taught ASL in the Prince George's County Public School System ("PGCPS"). *See* ECF 16-4. He also holds various professional certifications in several fields of education for grades Pre-K through 12. ECF 1 at 4. But, his certifications are not content-based. *See* Defendant's Ex. 23 at 1, 6, 12. ECF 1 at 3, 6.

---

[2] I have considered the Board's "Memorandum In Support Of Partial Motion To Dismiss" (ECF 5-1) ("Partial Motion to Dismiss"); Krpan's "Motion to Deny the Defendant's Partial Motion to Dismiss" (which I have construed as the opposition to the Board's Partial Motion to Dismiss) (ECF 14); and the Board's Reply (ECF 15). I have also considered the Board's "Memorandum In Support Of Motion For Summary Judgment" ("Motion for Summary Judgment") (ECF 16-1); Krpan's "Opposition To The [Board's] Motions for Partial Motions [sic] to Dismiss and Summary Judgment ("Summary Judgment Opp.") (ECF 21); and the Board's Reply ("Summary Judgment Reply") (ECF 22), as well as the exhibits appended to the submissions.

[3] ASL is a complete, complex language that employs signs made by moving the hands combined with facial expressions and postures of the body. It is one of several communication options used by people who are deaf or hard-of-hearing. *See* National Institute on Deafness and Other Communication Disorders, http://www.nidcd.nih.gov/health/hearing/pages/asl.aspx (last visited Aug. 13, 2013); *see also Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 781 (8th Cir. 2012).

On February 2, 2011, Krpan applied for employment as a teacher of ASL in the Howard County Public School System ("HCPSS").[4] Although he proceeded through several interviews, Krpan was not hired. *Id.* at 8-9. That decision has spawned this litigation.

Individuals applying for teaching positions in Howard County fill out an online employment application for every position of interest. According to the "HCPSS' Teacher and Related Professional Application and Hiring Process," *see* ECF 16-3, an applicant must submit three professional references, which "must be mailed directly to the HCPSS by each individual serving as a reference and should address performance *during the most recent school year*." *Id.* (emphasis added). Of import here, "[e]xperienced teachers must request a reference from their most current principal. Additional references should be from an assistant principal, department chair or team leader." *Id.* The website then describes the three-step interview process for obtaining employment with HCPSS. Applicants must first pass a screening interview. If the applicant passes the initial screening, he or she is referred by the Office of Human Resources to a Curriculum Interview. *Id.* Then, "[b]ased upon the Curriculum Interview results, system needs, and a completed application packet, candidates may be referred to a Site-Based Interview," as positions become available. *Id.* The Office of Human Resources retains the authority to make an offer of employment.

On or about February 2, 2011, plaintiff submitted an online application to HCPSS. *See* Defendant's Ex. 2. In his application, he listed his employment history, including his most recent employment with PGCPS. *Id.* Mr. Krpan initially moved smoothly through the application process. At his first interview he scored in the "highly recommended" category and

_____

[4] Krpan also applied for positions with HCPSS teaching English, Reading, and Special Education, as well as the positions of Administrator I/II. *See* ECF 1 at 6.

was marked as a Critical Shortage Candidate based on the content area that he taught, American Sign Language. *See* "Preliminary Interview Report" (ECF 16-6). On May 12, 2011, Donna Culan, a Specialist in the HCPSS Office of Human Resources responsible for World Languages, referred Mr. Krpan for a curriculum interview with Debbie Espitia, World Languages Coordinator, which was conducted on May 18, 2011. *See* "HCPSS Curriculum Interview Email", Ex. 6 to Motion for Summary Judgment (ECF 16-8). In the second interview Mr. Krpan earned a perfect score. *See* "Curriculum Interview Report," Ex. 7 to Motion for Summary Judgment (ECF 16-9). The interviewer's written comments described Krpan as "very experienced and enthusiastic" and noted his "public relations skills." *Id.*

On May 19, 2011, Ms. Culan sent Mr. Krpan an email message with the subject "HCPSS Application File," advising Krpan that there were "a few missing pieces" for his job application. In particular, she informed plaintiff that his file was "currently missing" three professional references as well as official transcripts from each college or university that he attended. *See* Ex. 8 to Motion for Summary Judgment (ECF 16-10).

Ms. Culan informed plaintiff on June 27, 2011, of a part-time ASL teaching position for the 2011-2012 school year. Defendant's Ex. 9. She also told plaintiff that she had only one of the three required references. *Id.*

On or about July 15, 2011, Gina Massella, the Principal of Howard High School, and Assistant Principal Kedre Fairley interviewed Mr. Krpan for a part-time ASL teacher position for the 2011-2012 school year, and found him "qualified for the position." But, Massella informed plaintiff that she did not have the authority to offer him the position and that the Office of

Human Resources would be in touch with him. *See* Ex. 10 to Motion for Summary Judgment, Affidavit of Gina Massella (ECF 16-12).

On August 1, 2011 and August 2, 2011, Ms. Culan of the HCPSS Office of Human Resources and Mr. Krpan exchanged several noteworthy emails. Ms. Culan emailed plaintiff on August 1, 2011, informing him that she was "[w]rapping up" his file and needed a copy of his "final evaluation" from the PGCPS and a reference from Mr. Krpan's supervisor at the PGCPS. Defendant's Ex. 11. Plaintiff responded: "There was no evaluation from PGCPS and the ASL program was cut due to the budget. It was just one year employment unfortunately but successful. I provided you with the current references." *Id.* Ex. 11 to Motion for Summary Judgment (ECF 16-13). Ms. Culan responded that she only had three references in Mr. Krpan's file, and none were from his supervisor at PGCPS. She asked: "Should there also have been one from a supervisor from PGCPS? Thanks!" ECF 16-13 at 5. Krpan responded: "No, there is no need for a reference from PGCPS." Mr. Krpan noted that he had two current references and a reference from Fauquier County Public Schools demonstrating his "successful employment" there for 29 years. *Id.* Ms. Culan replied: "My manager is requesting a reference from your most recent school system which is PG. I can send an email or make a phone call if you provide me with the name and contact information for an administrator who also served as an evaluator. Thanks so much!" *Id.*

By email on August 2, 2011, Krpan requested that Ms. Culan contact Fauquier County Public Schools. Regarding his employment with Prince George's County, Mr. Krpan wrote:

> Again, there was no evaluation. It was just one year of temporary employment with the Creative Arts Department. The program folded. I explained this in all three interviews.

Beside that, I was out of work due to the work-related injuries in my classroom for 8 months. I stopped my two boys from fighting. They were not injured but injured me instead. They broke my left thumb and torn [sic] my right knee. I had the cast and the surgery. WC has my records for them...Please feel free to call Janelle Downes, Fauquier County Public Schools...for a reference. You have a copy of her letter. "

Ex. 11 to Motion for Summary Judgment (ECF 16-13).

Ms. Culan responded, *id.*:

Was the Creative Arts Department part of the Central Office or at a particular school? In this position, there was someone you needed to report to, someone who served as your supervisor. Please share that person's name with me as a point of contact. Thank you!

Mr. Krpan wrote: "It was part of the school. I had multiple supervisors but I respectfully decline to offer this supervisor information. Please call Janelle Downes [of the Fauquier County Public School System in Virginia] instead." *Id.*

And, Ms. Culan answered, in part, *id.*:

It is HCPSS practice to have a reference from the most recent teaching experience for any teacher applicant—in your case, this would be from PGCPS. Because you respectfully declined to provide me with the name/names of supervisor(s) during your year in PGCPS, I was required to contact that school system to inquire as to whether or not you were eligible for rehire there.

PGCPS informed me that you are not eligible for rehire in that school system.

Before your file can move forward in HCPSS, more information is needed as to this. Please share what you can regarding this.

On August 2, 2011, Ms. Culan emailed Mr. Krpan asking that he authorize Prince George's County to share information with HCPSS about Krpan's time with that school district. Defendant's Ex. 12; ECF 16-14 at 2. Mr. Krpan authorized the disclosures by Homer McCall in the Division of Recruiting, Staffing and Certification in the Office of Human Resources in PGCPS. Ex. 15 to Motion for Summary Judgment (ECF 16-17 at 2). Ms. Culan wrote to

plaintiff on August 2, 2011: "[T]hank you again for your efforts to ensure your application file is complete and it can continue to move through our process." ECF 16-14.

Also on August 2, 2011, Damon R. Felton, Esq., Assistant Counsel for the Maryland State Education Association, sent an email message to Ms. Culan, stating: "Mr. John Krpan asked me to confirm that I am representing him with the appeal of his non-renewal from PCGPS that is currently pending before the State Board of Education. During his time with PGCPS [plaintiff] was only able to teach approximately the first and last month of the school year because of a work related injury that kept him out most of the year." Ex. 13 to Motion for Summary Judgment (ECF 16-15). Upon receipt of Mr. Felton's email, Ms. Culan wrote to Mr. Krpan: "Thank you for having Mr. Felton contact me . . . . The HCPSS application and hiring process requires references from any candidate's most recent teaching experience. Without this information, the candidate's file cannot move forward." Ex. 14 to Motion for Summary Judgment (ECF 16-16).

PGCPS was unable to disclose the information because of a matter involving plaintiff that was then pending before the Maryland State Board of Education ("MSBE"). *See* Affidavit of Ernesto Diaz, Ex. 16 to Motion for Summary Judgment (ECF 16-18); *see also Krpan v. Prince George's County Board of Education*, Opinion No. 11-36 ("MSDE Opinion"), Ex. 23 to Motion for Summary Judgment (ECF 16-25). The action before MSBE stemmed from Mr. Krpan's allegations against PGCPS of discrimination against him based on his disability when it failed to renew his contract. The action before the Board involved a three-day hearing. At the hearing, PGCPS argued that "the non-renewal was not a discriminatory act because Mr. Krpan performed unsatisfactorily and did not have proper certification." MSBE Opinion at 5 (ECF 16-

25 at 5). In a fourteen-page opinion issued by the MSBE, it affirmed the non-renewal of Mr. Krpan's employment contract by PGCPS. ECF 16-25. MSBE concluded that "it is clear from the record that the principal recommended the non-renewal because Mr. Krpan's disciplinary techniques were not valid and appropriate. They were dysfunctional and disruptive to the class and to the school." *Id.* at 14.[5]

On August 4, 2011, Mr. Krpan received an email from Rose Dennison, the Ombudsman for HCPSS. *See* Email from Rose Dennison to Mr. Krpan, 8/4/11, Ex.6 to Summary Judgment Opp. (ECF 21). In her email, Ms. Dennison referred to the Teacher and Related Professional Application Hiring Process, discussed above, and stated that the website that sets out the requirement for references "is the most specific description HCPSS has regarding this requirement. According to Mr. Diaz [then HCPSS's Manager of Teacher Recruitment and Retention] this is also consistent with HCPSS hiring practice." Ms. Dennison continued, *id.* at 2:

> You are correct that there is no HCPSS Board of Education Policy which compels an applicant to provide that information. Conversely, there is no policy that compels the school system to consider/accept an applicant for hire without this information. The Board does recognize and support that the Department of Education employees, no matter what their position, will follow all laws and exercise their best professional judgment in the execution of their duties within the spirit as well as the letter of Board policy.

---

[5] In a separate action in this Court, Mr. Krpan, through counsel, sued the Board of Education of Prince George's County under the ADA and Rehabilitation Act, alleging that PGCPS discriminated against him on the basis of disability in firing him. *See Krpan v. Bd. of Educ. of Prince George's County*, Civ. No. JFM-12-1282 (D. Md.). On August 6, 2012, *see* ECF 14 & 15 in JFM-12-1282, Judge Motz administratively closed that case, without prejudice to a motion by either party to reopen the matter upon the conclusion of Krpan's then-pending action in Maryland state court for judicial review of the MSBE's adverse decision. *See Krpan v. Prince George's County Bd. of Educ.*, No. CAL11-25166 (Md. Cir. Ct. P.G. Co.). According to the unofficial electronic docket for the state court case, available on the Maryland Judiciary's "Case Search" website, *see* http://casesearch.courts.state.md.us/, the Circuit Court for Prince George's County affirmed the MSBE's decision in August 2012, and the matter is now pending on appeal to the Maryland Court of Special Appeals.

> You have indicated that you have been forthcoming with all information about your most recent employment. They [Human Resources] are certainly appreciative of your honesty and Mr. Diaz offered that one potentially negative reference does not necessarily derail an application. However, HR would like to have a complete picture of the situation and, as the employer, have the opportunity to determine for themselves if the outstanding information outweighs the other material they have received.

On August 22, 2011, HCPSS hired a long-term substitute to fill the part-time ASL teacher position at Howard High School. *See* Affidavit of Kirk Thompson, Ex. 22 to Motion for Summary Judgment (ECF 16-24). The same day, Mr. Krpan emailed Mark D. Blom, General Counsel for HCPSS, arguing that because he (Krpan) was more qualified than the long-term substitute who was eventually hired, Howard County had discriminated against Krpan. *See* Ex. 21 to Motion for Summary Judgment (ECF 16-23). Mr. Blom responded that the decision was based on "legitimate nondiscriminatory reasons." *Id.*

Mr. Krpan then filed a complaint with the Office for Civil Rights ("OCR") of the U.S. Department of Education, alleging discrimination in employment based on age, gender and disability. OCR referred the complaint to the Equal Employment Opportunity Commission ("EEOC"). Ex. 24 to Motion for Summary Judgment. (ECF 16-26); *see also* Ex. 25 to Motion for Summary Judgment (ECF 16-27) (Krpan's complaint filed with the Howard County Office of Civil Rights and EEOC). The EEOC issued a right-to-sue letter on June 21, 2012, without a finding that the Board violated federal law. *See* ECF 1-2. Mr. Krpan filed suit in this Court on September 19, 2012.

## Discussion

### A. Partial Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant has moved to dismiss Mr. Krpan's claim of discrimination based on national origin, on the ground that Mr. Krpan failed to exhaust administrative remedies with regard to his claim. ECF 5-1. Although the motion is cast as one based on failure to state a claim, Fourth Circuit precedent indicates that failure to exhaust administrative remedies under Title VII should be addressed by way of a motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009) (stating that "failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim").

As a prerequisite to filing suit under Title VII, a plaintiff must file a "charge" of discrimination with the Equal Opportunity Employment Commission ("EEOC") or, in a "deferral" jurisdiction,[6] with an appropriate state or local agency, within a specified time "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). As the Fourth Circuit explained in *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 406 (4th Cir. 2013): "An employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process." *See also Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).

_____

[6] States that have a law prohibiting employment discrimination on the same bases that are covered by the federal statutes and authorizing a state or local agency to grant or seek relief from such discrimination are called "deferral" states. *See* 42 U.S.C. § 2000e-5(c), (d); *e.g.*, *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002); *Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2011). Maryland is a deferral state under Title VII; the Maryland Commission on Civil Rights ("MCCR"), formerly known as the Maryland Commission on Human Rights, is the applicable state enforcement agency. *Prelich*, 813 F. Supp. 2d at 661; *see* 29 C.F.R. § 1601.74 (listing qualifying state enforcement agencies).

The time allotted to file a charge under Title VII depends on where the charge is filed.  In a deferral jurisdiction, the limitations period is 300 days after the alleged unlawful employment practice occurred.  Otherwise, the period is 180 days.  *See* 42 U.S.C. § 2000e-5(e)(1); *see also Chacko*, 429 F.3d at 508; *Prelich*, 813 F. Supp. 2d at 661-62.

"A charge is acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' 29 C.F.R. § 1601.12(b) (2004)." *Chacko*, 429 F.3d at 508.  *See Bryant v. Bell Atl. Md. Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (holding that appellant failed to exhaust administrative remedies with respect to gender discrimination and retaliation claims, because appellant only charged race discrimination in his EEOC complaint and added additional claims in lawsuit).

 In *Balas*, 711 F.3d at 406-07, the Fourth Circuit summarized the two principal purposes of Title VII's exhaustion requirement.

> "'First, it notifies the charged party of the asserted violation.  Secondly, it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law.'" *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984) (quoting *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969)).  The filing of an administrative charge, therefore, "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).  Rather, the charge itself serves a vital function in the process of remedying an unlawful employment practice.

As noted, Krpan's suit contains a claim of discrimination based on national origin.  However, he did not include such a claim in his complaint to the EEOC.  Therefore, Count Two is subject to dismissal because Krpan did not exhaust administrative remedies.  Accordingly, I shall grant the Board's Partial Motion to Dismiss with respect to Count Two.

In the alternative, even if the Court possesses subject matter jurisdiction over Mr. Krpan's national origin discrimination claim, I am satisfied that plaintiff has failed to state a claim for discrimination based on national origin.

Mr. Krpan's claim is premised on the notion that ASL constitutes his "national origin." *See* Complaint at 3 (ECF 1-1 at 3). However, neither ASL nor any other language, as such, constitutes a national origin. "Title VII does not expressly identify language as a protected class." *Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 612 (S.D.N.Y. 2009) (citing *Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983)) (stating that "[l]anguage, by itself, does not identify members of a suspect class"). Although federal law "prohibits discrimination on the basis of national origin, language and national origin are not interchangeable." *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 795 (8th Cir. 2010). Thus, ASL does not constitute plaintiff's "national origin" under Title VII.

### B. Summary Judgment

#### *1. Standard of Review*

The Board seeks summary judgment with respect to Mr. Krpan's claims of discrimination based on gender, age, and disability. Under Fed. R. Civ. P. 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment. *Id.*

In resolving a summary judgment motion, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts' "showing that there is a triable issue." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). *See Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) ("Generally, a district court must refuse summary judgment 'where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.'") (*quoting Liberty Lobby*, 477 U.S. at 250 n.5). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214 (4th Cir. 2002) (quoting *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present

facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d). *See generally Harrods*, 302 F.3d at 244-46 (discussing affidavit requirement of former Rule 56(f)).

In this case, no discovery has occurred. If a nonmoving party believes that discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). On the other hand, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature.

Plaintiff has not filed an affidavit under Rule 56(d). Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Both parties have submitted exhibits in support of their positions. Moreover, plaintiff has not submitted a Rule 56(d) affidavit, nor does he contend that he requires discovery in order to

respond to defendant's motion.[7]  Accordingly, I will address defendant's pre-discovery summary judgment motion.

## 2. *Statutory Background*

Plaintiff's claims arise under Title VII, the ADEA, the ADA, and the Rehabilitation Act. All four statutes prohibit discrimination in employment on the basis of certain illegitimate considerations, including sex (Title VII), age over 40 (ADEA), and disability (ADA and Rehabilitation Act).  The Board has not disputed that it is generally subject to suit under the statutes on which plaintiff relies.[8]

---

[7] By letter of January 27, 2013 (ECF 17), and in accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), plaintiff, who is self-represented, was "advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him."

[8] Because "Maryland boards of education are state agencies for Eleventh Amendment immunity purposes," *Lee-Thomas v. Prince George's County Public Schools*, 666 F.3d 244, 248 n.5 (4th Cir. 2012), the Board might be able to assert an Eleventh Amendment sovereign immunity defense to at least some of Mr. Krpan's claims.  The ADA and the ADEA both contain provisions purporting to abrogate the states' sovereign immunity from damages actions under the Eleventh Amendment.  *See* 42 U.S.C. § 12202 (ADA); 29 U.S.C. § 630(b) (ADEA's definition of "employer," including "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State").  But, these provisions are not valid under all circumstances.  Notably, the Supreme Court held, in *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), that the ADA's immunity-stripping provision is invalid with respect to Title I of the ADA, governing employment discrimination. Similarly, in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 91 (2000), the Court held that the "ADEA's purported abrogation of the States' sovereign immunity is . . . invalid."  In contrast, the ADA's immunity-stripping provision has been held valid, at least in some circumstances, with respect to Title II of the ADA, which prohibits disability discrimination in the programs and activities of public entities, *see, e.g.*, *Constantine*, *supra*, 411 F.3d 474 (holding that Title II of ADA validly abrogates sovereign immunity of state institutions of higher education), although it is not clear whether a suit against a state agency that, in substance, alleges employment discrimination is viable under Title II of the ADA.  *See Garrett*, 531 U.S. at 360 n.1 (noting that federal appellate courts are divided on whether employment discrimination claims are available under Title II, but declining to resolve the issue); *see generally Fink v. Richmond*, Civ. No. DKC-07-714, 2008 WL 9364730, at *7-8 (D. Md. Mar. 24, 2008) (discussing uncertain state of federal precedent).

In particular, Title VII provides that it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). As amended by the Civil Rights Act of 1991, Title VII expressly provides for "mixed-motive" liability, stating: "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that . . . sex . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 317 (4th Cir. 2005) ("Congress amended the Civil Rights Act to provide explicitly for liability in mixed-motive cases."), *cert. denied*, 546 U.S. 1091 (2006).

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). However, the ADEA's protections are "limited to individuals who are at least 40 years of age." *Id.* § 631(a). Plaintiff, who was born in 1955, was within the ADEA's protection

---

Unlike the ADA and the ADEA, § 504 of the Rehabilitation Act was enacted pursuant to Congress's Spending Clause authority. *See Constantine*, 411 F.3d at 491. Accordingly, its protections are triggered by a state entity's acceptance of federal financial assistance, which is deemed to operate as a waiver of the state's Eleventh Amendment sovereign immunity against claims under § 504. *See id.* at 491-92. Although Mr. Krpan does not identify a specific stream of federal funding received by the Board, the Board does not challenge its amenability to suit under the Rehabilitation Act. Nor has the Board asserted an Eleventh Amendment immunity defense to plaintiff's ADA and ADEA claims. Notably, an Eleventh Amendment defense would not be available with respect to plaintiff's Title VII claims in any event. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 447 (1976) (holding that Congress validly abrogated the states' Eleventh Amendment immunity in Title VII).

at all relevant times.  The Supreme Court has held that, unlike Title VII, the ADEA does not permit "a mixed-motives age discrimination claim."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009).  Rather, given that ADEA liability hinges on discrimination "*because of . . . age*," 29 U.S.C. § 623(a)(1) (emphasis added), the plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action."  *Gross*, 557 U.S. at 177.

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  *Id.* § 12111(8).  In other words, the term includes "an 'individual with a disability' who, with 'reasonable accommodation,' can perform the essential functions of the job."  *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 393 (2002) (citation omitted).  The ADA's definition of "disability" is set forth in 42 U.S.C. § 12102.  Its primary meaning is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual."  *Id.* § 12102(1)(A).  There is no dispute that deafness is a disability for purposes of the ADA.  *See, e.g.*, *Runnebaum v. Nationsbank*, 123 F.3d 156, 166 n.5 (4th Cir. 1997) (en banc) (plurality) ("[S]ome conditions will always constitute impairments that substantially limit the major life activities of the afflicted individual.  For instance, blindness and deafness are physical conditions that always substantially limit the major life activities of blind and deaf individuals."), *overruled on other grounds by Bragdon v. Abbott*, 524 U.S. 624 (1998).

Title II of the ADA prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," *id.* § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability." *Id.* § 12132. The Rehabilitation Act was enacted seventeen years prior to the ADA. Title II of the ADA is closely related to § 504 of the Rehabilitation Act, and to "the extent possible, [courts] construe similar provisions in the two statutes consistently." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th Cir. 2002). *See Seremeth v. Bd. of County Comm'rs of Frederick County*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) ("Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is 'substantially the same.'") (citation omitted); *Rogers v. Dept. of Health & Environmental Control*, 174 F.3d 431, 433-34 (4th Cir. 1999) (stating that courts may apply Rehabilitation Act precedent in interpreting the ADA, and vice versa). Indeed, the statutes "share the same definitions of disability," *Rogers*, 174 F.3d at 433, and Title II of the ADA explicitly provides that "[t]he remedies, procedures, and rights" provided under § 504 of the Rehabilitation Act "shall be the remedies, procedures, and rights [that Title II of the ADA] provides to any person alleging discrimination on the basis of disability. . . ." 42 U.S.C. § 12133.[9]

_____

[9] In turn, the Rehabilitation Act incorporates by reference the "remedies, procedures, and rights" established by Title VI of the Civil Rights Act of 1964 (codified at 42 U.S.C. § 2000d *et seq.*), which prohibits discrimination on the basis of race, color, or national origin by recipients of federal financial assistance. 29 U.S.C. § 794a(a)(2). Accordingly, courts look to Title VI precedent to resolve remedial and procedural issues arising in Rehabilitation Act and ADA Title II cases. In general, a successful plaintiff in a suit under Title II of the ADA or § 504 of the Rehabilitation Act is entitled to a "full panoply" of legal and equitable remedies, including money damages and injunctive relief. *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 830 (4th Cir. 1994); *see generally id.* at 829-32. However, there are some limitations as to available

Despite the general congruence of Title II of the ADA and § 504 of the Rehabilitation Act, there are two principal differences between the statutes. First, a plaintiff must show a different "causative link between discrimination and adverse action" under the two statutes. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 469 (4th Cir. 1999). Under Title II, a plaintiff need only prove discrimination "by reason of" disability. 42 U.S.C. § 12132. But, a successful Rehabilitation Act claim requires a showing of discrimination "*solely* by reason of" disability. 29 U.S.C. § 794(a) (emphasis added). *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 n.17 (4th Cir. 2005) ("[W]e have recognized that the causation standards under Title II of the ADA and § 504 of the Rehabilitation Act are 'significantly dissimilar.'") (quoting *Baird*, 192 F.3d at 469).

The second significant difference between Title II and the Rehabilitation Act is that, as noted, Title II applies to any "public entity," while § 504 of the Rehabilitation Act applies only to federal agencies or to "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Thus, to show a violation of the Rehabilitation Act by a state, local, or private entity, a plaintiff must demonstrate that the "program or activity" at issue receives "Federal financial assistance."

### 3. Methods of Proof

Where, as here, a plaintiff has alleged that an employer failed to hire him on an discriminatory basis, the plaintiff bears the burden of proving his claim by a preponderance of the evidence. In general, there are "two avenues" by which a plaintiff may prove intentional

---

relief. Punitive damages are not available. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Moreover, compensatory damages are available only upon proof of disparate treatment, rather than mere disparate impact. *Pandazides*, 13 F.3d at 829-30 & n.9.

employment discrimination at trial, *Hill v. Lockheed Martin Logistics Mgmt.*, Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc), and these two avenues inform a court's evaluation of the parties' proffers of evidence at the summary judgment stage.

The first avenue is to offer "'direct or indirect'" evidence of discrimination, under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted). The second avenue available to the plaintiff is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[10] Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

"To avoid summary judgment" when proceeding under ordinary principles of proof, "'the plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'" *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (internal citations and quotation marks omitted; alteration in original). In *Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510, 520 (4th Cir. 2006), the Fourth Circuit explained the showing that is required to withstand summary judgment via ordinary principles of proof:

---

[10] *McDonnell Douglas* involved a claim of racial discrimination in hiring under Title VII. However, the burden-shifting methodology it endorsed has been adapted for use in cases of alleged discrimination in other statutory contexts. *See, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50-52 & n.3 (2003) (applying *McDonnell Douglas* framework in ADA employment discrimination case); *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc) (applying *McDonnell Douglas* framework to employee's claim of age discrimination under ADEA). *But see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009) (observing that the Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context").

Direct evidence must be "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc) (citation and internal quotation marks omitted). Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action. *See Brinkley*, 180 F.3d at 608 ("To survive summary judgment on the basis of direct and indirect evidence, Brinkley must produce evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action.").

In this case, plaintiff has not alleged or adduced any direct or indirect evidence of discrimination on the basis of ordinary principles of proof. Accordingly, the focus shifts to the second method of proof: the *McDonnell Douglas* approach.

The *McDonnell Douglas* approach establishes three stages at which the burden of evidentiary production is shifted back and forth between the plaintiff and defendant. However, under the *McDonnell Douglas* approach, the "ultimate burden of persuasion . . . never 'shifts' from the plaintiff" to prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff in a failure-to-hire suit is generally required to show that the employer took adverse action against an applicant who was qualified for employment, "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

For instance, in *McDonnell Douglas,* the prima facie case of racial discrimination in hiring was formulated as follows, 411 U.S. at 802:

> (i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

The rationale of the *McDonnell Douglas* approach is that, if a plaintiff proves a prima facie case, and the defendant submits no evidence of any legitimate basis for its actions, the court or fact finder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). Under the *McDonnell Douglas* approach, if a plaintiff establishes at trial, by a preponderance of the evidence, a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

"If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). When the defendant meets its burden of production, the plaintiff must then prove, by a preponderance of evidence, "that the proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

*See also Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [Plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

On the other hand, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," and the plaintiff has proved a prima facie case, "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3. *See Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

In this case, I need not dwell on the elements of a prima facie case as to each of plaintiff's claims because the Board concedes that, with the exception of his national origin claim, discussed *supra*, "Plaintiff has established a *prima facie* case with regard to each of his claims." ECF 16-1 at 16. The Board insists, however, that it has proffered a legitimate, non-discriminatory reason for refusing to hire plaintiff. *See id.* In particular, it points to unrefuted evidence of Mr. Krpan's failure to comply with HCPSS's application requirements, as set forth on the website and in the emails from Ms. Culan, with respect to the plaintiff's failure to submit a reference from his most recent employer, PGCPS.

As noted, where a defendant employer carries its burden to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action, "the presumption raised

by the prima facie case is rebutted," *Burdine*, 450 U.S. at 255, and the prima facie case thus "is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. Rather, the question becomes whether the plaintiff can demonstrate that the employer's stated reason is pretextual, which requires the plaintiff "to prove '*both* that the reason was false, *and* that discrimination was the real reason.'" *Adams*, 640 F.3d at 560 (quoting *Jiminez*, 57 F.3d at 378) (emphasis in original). Thus, based on the Board's concession that Mr. Krpan has established a prima facie case, I must determine whether the Board's proffered basis for not hiring Krpan is legitimate and, if so, whether Krpan has evinced evidence that could convince a fact finder to disbelieve the proffered legitimate reason and conclude that it was merely a pretext for discrimination on the basis of sex, age, or disability.

The Board has proffered a legitimate nondiscriminatory basis for its decision not to hire Mr. Krpan. Specifically, Mr. Krpan repeatedly refused to comply with requests to provide a reference from a supervisor at his most recent job. Although there does not appear to be a Fourth Circuit case directly on point, several courts have reached the commonsense conclusion that a job applicant's failure to provide a reference is a legitimate basis for an employer to decline to hire the applicant. For example, in *Thurston v. American Press, LLC*, 497 F. Supp. 2d 778 (W.D. Va. 2007), the plaintiff alleged that the defendant refused to hire him in unlawful retaliation for his prior filing of a Title VII complaint with the Equal Employment Opportunity Commission. The district court observed that the employer's human resources manager had "stated in detail how she could not secure appropriate references from Plaintiff's earlier employers." *Id.* at 785. The court remarked: "The inability of an employer to secure appropriate employment references is certainly a legitimate, non-retaliatory reason for not hiring a

candidate." *Id.* The court also noted that the defendant had "spent considerable time and effort in examining Plaintiff to determine whether he was an appropriate candidate for employ," including three interviews with "three different agents of Defendant" and attempts by the human resources manager "to contact at least three of Plaintiff's prior employers." *Id.* According to the *Thurston* Court, "the fact that Defendant interviewed Plaintiff multiple times for the position" "buttressed" its conclusion that the inability to obtain references for plaintiff constituted a legitimate basis for defendant's decision not to hire him. *Id.*

Other courts have spoken in similar terms. *See E.E.O.C. v. Am. Precision*, No. 92-CV-0549E(F), 1995 WL 264406, at *5 (W.D.N.Y. May 2, 1995) (holding that employer's "proffered reasons . . . for refusing to hire" plaintiff, principally "lack of a positive reference," "satisfied its burden of producing valid nondiscriminatory reasons for failing to hire"); *Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp. 640, 651 (S.D.N.Y. 1994) (holding that defendants met their burden by proffering "a number of non-discriminatory considerations in hiring [a comparator] over plaintiff," including that the comparator "provided as references three current Bronx Hospital employees, while plaintiff failed to provide complete information on his references"); *Durham v. Bryant Nursing Ctr.*, Civ. No. 85-248-2-MAC, 1987 WL 16434, at *4 (M.D. Ga. Mar. 12, 1987) (holding that "Defendant has articulated . . . legitimate, non-discriminatory reason[s] why it failed to hire Plaintiff," including that plaintiff "could not produce any favorable references from former employers"); *see also Punahele v. United Air Lines, Inc.*, 756 F. Supp. 487, 489 (D. Colo. 1991) (concluding, in age discrimination suit, that defendant had proffered legitimate basis for failure to hire plaintiff where "the references provided in [plaintiff's] application could not verify his whereabouts or activities during [a particular] nine-month period," but holding that plaintiff

raised "a genuine issue of material fact whether the verification problem was the true motive for refusing to hire him," where applicant later provided "additional references" and, "before attempting to verify [plaintiff's] whereabouts and activities, [defendant] began hiring younger, less experienced applicants").

Accordingly, the burden shifts to Mr. Krpan to put forth evidence that, if believed, could convince a finder of fact that the Board's purported reasons were pretextual, and that the actual basis for the Board's employment decision was plaintiff's sex, age, or disability. Put another way, the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, *supra*, 477 U.S. at 252. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* Mr. Krpan fails this test, as he has adduced no evidence whatsoever to prove that HCPSS's stated reason for declining to hire him was a pretext for unlawful discrimination. For instance, there is no evidence that HCPSS waived the reference requirement for the long-term substitute who was ultimately hired in the position for which Krpan applied. Nor is there any evidence that the requirement as to references was unreasonable or otherwise applied selectively to Krpan.[11]

Indeed, until Mr. Krpan failed to provide a reference from his most recent employment, it is clear that the Board viewed him as a highly attractive candidate for the position. He was interviewed repeatedly and was designated as a "highly recommended" Critical Shortage Candidate. *See* "Preliminary Interview Report" (ECF 16-6). As noted, one interviewer

---

[11] As noted, Mr. Krpan did not hint in any way that discovery was necessary for him to respond to defendants' Motion for Summary Judgment.

described Krpan as "very experienced and enthusiastic" and noted his "public relations skills." *See* "Curriculum Interview Report," Ex. 7 to Motion for Summary Judgment (ECF 16-9). It was only when Mr. Krpan sought to evade defendant's legitimate request to provide a reference from his most recent employer that his application foundered.

Mr. Krpan's intransigence in producing the requested reference led the Board to pursue its own inquiry. It then discovered that plaintiff would not have received a favorable reference from his last employer. That plaintiff disagreed with PGCPS's decision to terminate him is of no moment in the context of the issues here.

In sum, Mr. Krpan has provided no evidence from which a fact finder could conclude "'*both* that the [Board's proffered] reason was false, *and* that discrimination was the real reason.'" *Adams*, 640 F.3d at 560 (quoting *Jiminez*, 57 F.3d at 378) (emphasis in original). He has not advanced any evidence that even hints that the Board's failure to hire him was based on his sex, age, or disability.

To be sure, Mr. Krpan may believe that it is an unwise or unfair practice for the Board to require him to provide a reference from his most recent employer. But, federal employment discrimination law does not "'declare unlawful every arbitrary and unfair employment decision.'" *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994) (citation omitted). The question in this suit is not whether the Board's decision not to hire Mr. Krpan was "'wise, fair, or even correct.'" *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir.) (citation omitted), *cert. denied*, 531 U.S. 875 (2000). Rather, "[t]he crucial issue in a[n] [employment discrimination] action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." *Jiminez*, 57 F.3d at 383. Mr. Krpan has not satisfied his burden to

produce evidence from which a fact finder could discern an unlawfully discriminatory motive for the Board's decision not to hire him. Accordingly, defendant's Motion for Summary Judgment will be granted.

An Order implementing my rulings follows.


Date:   August 15, 2013                    _____/s/_____
                                           Ellen Lipton Hollander
                                           United States District Judge